UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERRY D. PIERCE                                                    PLAINTIFF

          VS.                        Civil No. 2:14-cv-02113-MEF

CAROLYN W. COLVIN,                                                 DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Sherry D. Pierce, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her claim for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"). In this judicial

review, the court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.        Procedural Background:

Plaintiff filed her application for DIB and SSI on May 4, 2011, alleging an onset date of May

4, 2011, due to degenerative disc disease, migraines, anxiety, depression, bipolar, fibromyalgia,

and arthritis. (T. 195) Plaintiff's applications were denied initially and on reconsideration. (T. 68-

70, 71-74, 79-80, 81-83) Plaintiff then requested an administration hearing, which was held via

teleconference before Administrative Law Judge ("ALJ"), Hon. Jon. D. Boltz, on October 10,

2012. Plaintiff was present, represented by counsel, and appeared in Russellville, Arkansas; the

1

ALJ presided over the hearing in Albuquerque, New Mexico. (T. 12) During the hearing, the Plaintiff requested and the ALJ later approved a new onset date of October 15, 2010. (T. 12)

At the time of the hearing, Plaintiff was 53 years old, had completed 10th grade, and obtained her certified nursing assistant license in 2001. (T. 38, 196) Her past relevant work experience included working as a school bus driver and a school cook from August 2005 until October 2005, a waitress from April 2007 until August 2007, a certified nursing assistant from October 2007 until January 2008, line worker at a chicken plant from April 2008 until June 2008, sales manager in July 2008, bus and delivery driver from July 2008 until August 2008, and a cashier in 2009. (T. 175-183)

Following the hearing, the case was reassigned, due to the unavailability of ALJ Boltz, to ALJ Clifford Shilling, who reviewed the entire record and determined an additional hearing was not required. (T. 12)

On June 7, 2013, the ALJ found Plaintiff's degenerative disc disease and fibromyalgia severe, however he found Plaintiff's headaches, depression, anxiety, and bipolar not severe as they did not cause more than minimal limitations in the Plaintiff's ability to perform basic work activities. (T. 14-15) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from October 15, 2010 through the date of his Decision issued June 7, 2013. The ALJ determined Plaintiff had the RFC to perform light work, except she could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (T. 19)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 20, 2014. (T. 1-4) Plaintiff then filed this action on May 12, 2014. (Doc. 1) This case is

2

before the undersigned pursuant to consent of the parties. (Doc. 8) Both parties have filed briefs, and the case is ready for decision. (Doc. 11 and 12)

## II.      Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset on October 15, 2010 through the date of the ALJ's Decision issued June 7, 2013. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B) the ALJ erred in his step two and three analysis; and, (C) the ALJ erred in his RFC determination. (Doc. 11, pp. 6-18)

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A.  Fully and Fairly Develop the Record:

Plaintiff asserts the ALJ failed to fully and fairly develop the record when the ALJ failed to obtain clarification from state agency medical consultant Dr. Michael R. Westbrook. (Doc. 11, pp.

4

7-8) The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). After reviewing the record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision, thus remand is not necessary.

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id.* (internal quotations and citation omitted).

Plaintiff argues the ALJ erred when he failed to obtain clarification from Dr. Westbrook concerning a physical consultative examination performed on September 21, 2011.  Upon examination, Dr. Westbrook observed Plaintiff's ears, oropharynx, neck and abdomen, shoulders, elbows, wrists, hands, hips, knees, ankles, and lumbar spine were all within normal limits.  He observed Plaintiff had decreased range of motion in her cervical spine; however, she did not have any muscle spasms, weakness, or atrophy, and her neurological reflexes were within normal limits. Plaintiff had a decreased sensation on the entire right side of her body.  Plaintiff was able to hold a pen and write, touch her fingertip to palm, oppose thumb to fingers, pick up a coin, stand and walk without assistive devices, and walk on heel and toes; however, she was unable to squat and

arise from a squatting position. While Dr. Westbrook noted she had decreased grip strength, he observed the x-rays of her hands were within normal limits.  Dr. Westbrook diagnosed Plaintiff with bipolar, low back pain, nicotine addiction, migraines, and a history of fibromyalgia. (T. 356-360)

Plaintiff argues the ALJ erred when he failed to place manipulative restrictions upon the Plaintiff due to Dr. Westbrook's finding of a 60% reduced grip strength in the right hand and an 85% reduced grip strength in the left hand. (T. 359) Plaintiff's argument is without merit.

Contrary to the Plaintiff's argument, the ALJ was not required to re-contact Dr. Westbrook for further information regarding whether Dr. Westbrook intended to leave the limitations portion of his report blank.  If an ALJ discounts a medical source's opinion, and if the basis for the opinion is unclear, then the ALJ should make every reasonable effort to re-contact that source for clarification.  However, if the ALJ concludes the consultative doctor's opinion was more limiting than the objective medical evidence supported, it is within the ALJ's discretion to determine whether or not to re-contact the medical source. (T. 25) 20 C.F.R. §§ 404.1520(b)(c)(1), 416.920b(c)(1) ("We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence.")

Furthermore, Plaintiff went to the emergency room at Sparks Regional Medical Center on October 29, 2011, about a month after Dr. Westbrook's examination, due to headaches, history of migraines, and chronic back pain.  Upon examination, Dr. Chester Carlson found Plaintiff had normal range of motion and tone in her extremities, and no swelling.  Plaintiff's motor strength, sensation, and reflexes were within normal limits. (T. 453) Clarification from Dr. Westbrook was not needed, as the ALJ was able to review other records and determined there was sufficient

evidence to make an informed decision, and Dr. Westbrooks' opinion was not inconsistent with the other evidence.

In making his RFC determination, the ALJ also relied on the diagnostic testing, objective medical evidence, treatment records, Plaintiff's testimony, and records submitted to the Commissioner.  The ALJ further ordered a mental evaluation conducted by Dr. Steve Shry, and consultative physical and mental examinations.

The undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision. The Plaintiff has not demonstrated unfairness or prejudice resulting from the ALJ's failure to re-contact Dr. Westbrook to further develop the record.  Such a showing is required in order for a case to be reversed and remanded. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (absent unfairness or prejudice, we will not reverse or remand).

### B.  ALJ Erred at Step Two and Step Three:

Plaintiff alleges the ALJ did not apply the psychiatric review technique and omitted all discussion and review of Plaintiff's personality disorder. (Doc. 11, pp. 8-12) The undersigned has reviewed the record and finds substantial evidence supports the ALJ's step two and step three analysis.

As mentioned above, the Commissioner uses a five-step sequential process to evaluate and determine if a claimant is disabled. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe."  *Simmons,* 264 F.3d at 754; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An impairment is "not severe" if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.  *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987);

*Id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a).  If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).  It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000).  Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing.  See, e.g., *Page v. Astrue*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

There are three steps used in evaluating whether a Plaintiff's mental impairment is severe.  In applying the special technique the ALJ must first evaluate Plaintiff's symptoms, signs, and laboratory findings to determine whether Plaintiff had a medically determinable impairment.  Once the ALJ has established Plaintiff has a medically determinable impairment, the ALJ must rate the functional limitation using four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and, decompensation. The ALJ is to rate the degree of

functional limitation in the first three areas as none, mild, moderate, marked, and extreme.  The ALJ will rate decompensation as none, one or two, three, four or more. After rating the Plaintiff's functional limitation resulting from Plaintiff's impairment, the ALJ determines the severity of the Plaintiff's impairments. If the ALJ rates the degree of claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d).

In the present case, the ALJ determined Plaintiff's depression, anxiety, and bipolar were medically determinable impairments.   Plaintiff contends the ALJ failed to incorporate her personality disorder in his Decision. (Doc. 11, pp. 9)  The Plaintiff is mistaken.

Plaintiff did not allege a personality disorder in her application, nor did she testify as to having one.  The Eighth Circuit has repeatedly stated that an ALJ has no duty "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996)); *see also Brockman v. Sullivan,* 987 F.2d 1344, 1348 (8th Cir. 1993) ("The ALJ, however, had no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability"); *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir. 1989) (ruling that ALJ did not err in not ordering consultative examination before concluding claimant had no mental impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety).

Next, the ALJ rated the functional limitations using four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and decompensation.  The

ALJ determined Plaintiff had mild limitation regarding her activities of daily living.  In making this determination, the ALJ took into consideration Plaintiff's Function Reports where she assisted her husband in taking care of the dog, and she needed assistance putting on her bra, bathing, and combing her hair.  Plaintiff could feed herself, however, she needed assistance cutting her food. Plaintiff washed a couple of loads of laundry a week, performed some homework, and shopped in grocery stores.  Plaintiff's hobbies included watching television and playing with her grandchildren. (T. 15)

In the area of social functioning, the ALJ determined Plaintiff had mild limitation.  Plaintiff shopped with her husband for household needs once a month, she spent time on the computer and telephone, attended family events, physical therapy, and went to Wal-Mart on a regular basis. Plaintiff did not report any problems getting along family, friends, neighbors, and authority figures. She had never been fired or laid off from a job due to problems getting along with other people. (T. 15)

In the third functional area, concentration, persistence, or pace, the ALJ determined Plaintiff had a mild limitation.  Plaintiff was able to handle finances.  She needed to be reminded to take medication and showers.  She was able to drive, but did not do so because of her eyesight. Plaintiff could pay attention for a few minutes, but was unable to finish what she started.  She was not able to follow written or spoken instructions well or handle change in routine well. (T. 16) Concerning the fourth area, the ALJ found that Plaintiff had not experienced any episodes of decompensation of extended duration. (T. 16)

Because Plaintiff's medically determinable impairments caused no more than a mild limitation in any of the first three functional areas, and there were no episodes of decompensation, the ALJ determined Plaintiff's medically determinable mental impairments were non-severe. (T. 16)

In determining the Plaintiff's degree of limitation in the paragraph "B" mental function analysis, the ALJ considered the following evidence.  Plaintiff began mental health treatment at Counseling Associates in February 2012.  Plaintiff reported a poor self- image, being raped as a child, abused by husband, and she had been attacked twice. (T. 504) Dr. Don Pennington, psychiatrist at Counseling Associates, noted her insight and judgment were poor/fair and deferred a diagnosis. (T. 504) On March 20, 2012, Plaintiff was pleasant and her mood was anxious. Dr. Pennington diagnosed her with mood disorder, not otherwise specified and ordered lab work. (T. 503) On April 23, 2012, the medical management note indicated Plaintiff had not kept her therapy appointments and her "life [wa]s a wreck." Her primary care physician stopped prescribing her Hydrocodone and Xanax. (T. 501) Plaintiff had poor medical compliance. She appeared unkept, affect was tearful, and her mood anxious. (T. 501) Dr. Pennington increased her Lithium and Paxil, wanted her to see the therapist, RTC three weeks, and resume Restoril. (T. 501) On May 14, 2012, Plaintiff brought Dr. Pennington a letter from her attorney regarding her SSI. Plaintiff appeared disheveled and her mood was anxious. (T. 500) Dr. Pennington diagnosed her with a mood disorder, not otherwise specified, and recommended she continue her medications. (T. 500)

Along with seeing Dr. Pennington, Plaintiff was treated by Tim Hughes, licensed professional counselor, ("Counselor Hughes") at Counseling Associates. On March 19, 2012 Plaintiff saw Counselor Hughes and he observed Plaintiff had increased anxiety.  Plaintiff also requested half sessions due to financial reasons.  (T. 511) On April 24, 2012 Plaintiff saw Counselor Hughes and advised her primary care physician stopped prescribing her Xanax and Hydrocodone. Plaintiff reported some suicidal thoughts. (T. 509)

A mental RFC was performed by Dr. Pennington on May 14, 2012.  Dr. Pennington opined Plaintiff had no useful ability to function on a sustained basis, an eight hour work day for five days

11

in a full work week, in the following areas: remember locations and work-like procedures; maintain attention and concentration for extended periods (extremely distractible); work in coordination with or proximity to others without being districted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms; get along with other coworkers or peers without districting them or exhibiting behavioral extremes (very emotional); behave in an emotionally stable manner; relate predictably in social situations; and, work without deterioration or decompensation causing the individual to withdraw from the situation and exacerbation of symptoms or adaptive behaviors. (T. 494)

Counselor Hughes completed a mental RFC on May 11, 2012.  Counselor Hughes found Plaintiff had no useful ability to function on a sustained basis, an eight hour work day for five days in a full work week, in the following areas: remember locations and work-like procedures; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being districted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms; performing at a constant pace without an unreasonable number and length of rest periods; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; behaving in an emotionally stable manner; relating predictably in social situations; demonstrating reliability; and, working without deterioration or decompensation causing the claimant to withdraw from the situation or exacerbation of symptoms or adaptive behaviors. (T. 495)

The ALJ gave little weight to the forms submitted by Dr. Pennington and Counselor Hughes. The ALJ discounted both forms because they were "check-off" forms, they did not cite any supporting clinical test results or findings, and the physician's treatment notes did not record any

significant limitations due to the alleged impairments. The Court finds the ALJ properly discounted Dr. Pennington's and Counselor Hughes' check-the-box forms after finding they were not supported by the objective evidence in the record and that they contrasted with other evidence in the record. *See Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007)(ALJ may credit another medical evaluation over that of treating physician when other assessment is supported by better medical evidence, or where treating physician renders inconsistent opinions)

The ALJ next considered the opinion of Dr. Shry.  Dr. Shry conducted a mental evaluation on October 13, 2011. Plaintiff reported outpatient treatment at Day Springs Behavioral Health in 2009, but no inpatient treatment. (T. 373) At the time of the examination, Plaintiff was taking Paxil, Soma, Hydrocodone, Xanax, and Restoril. (T. 373) Plaintiff indicated she had been convicted of two felonies: hot check writing and forgery. (T. 373) Dr. Shry observed Plaintiff seemed pleasant, cooperative, and she demonstrated a normal and stable mood. Her speech was a normal rate and volume, however she did have a mild slur. Her responses were logical, relevant, and her associations were well connected and goal directed.  There was no evidence of thought disorder or hypomanic behavior, and she was calm and attentive.

Plaintiff communicated in an intelligent and effective manner.  She did not demonstrate difficulty in comprehending and carrying out simple and complex tasks.  She did not appear to be limited in her ability to cope with the typical demands of basic work like tasks, and she was not impaired in her ability to attend and sustain concentration on tasks. Dr. Shry believed she might have been mild to moderately limited in her ability to sustain persistence when completing tasks. It appeared to Dr. Shry Plaintiff functioned within the low range of intellect and diagnosed her with adjustment disorder, mild depression with mixed anxiety features, personality disorder, not otherwise specified, and a GAF of 60-65. (T. 375)

After considering Dr. Shry's opinion, the ALJ determined it was supported by the objective medical evidence of record, and Plaintiff's impairments of depression, anxiety, and bipolar did not have more than a *de minimis* effect on the Plaintiff's ability to perform basic work activities and were not severe disabling impairments. (T 19)

Plaintiff next contends the ALJ erred when he failed to consider Plaintiff's personality disorder. (Doc. 11, p. 11) The Plaintiff is incorrect.  The ALJ did consider Plaintiff's personality disorder when he reviewed Dr. Shry's mental evaluation which diagnosed Plaintiff with adjustment disorder, depression with mixed anxiety features, mild, and personality disorder, not otherwise specified, with cluster B traits. (T. 18) Again, the fact that Plaintiff did not even allege the condition in her application is significant to the Court. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Further, alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record.  *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt v. Apfel*, 204 F.3d at 852 (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation).

Plaintiff had the burden of showing a severe impairment significantly limited her mental ability to perform basic work activities.  *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001). The undersigned finds substantial evidence supported the ALJ's determination of Plaintiff's severe impairments of degenerative disc disease and fibromyalgia, but not the other alleged impairments.

## C.  RFC Determination:

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence. (Doc. 11, pp. 12-17) The Court disagrees.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*,

363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

Plaintiff argues the ALJ failed to incorporate Plaintiff's mental restrictions into his RFC determination. (Doc. 11, pp. 12-16) Plaintiff's argument is without merit. Plaintiff's depression, anxiety, and bipolar disorder were well controlled by medications. (T. 311, 321, 323-325) Further, Plaintiff had poor medical compliance. (T. 320, 501)

Dr. Pennington diagnosed her with mood disorder, not otherwise specified. (T. 503) Plaintiff requested half sessions, due to financial reasons, when she met with Counselor Hughes. (T. 511) The Court rejects Plaintiff's contention that the ALJ improperly disregarded the opinions of Dr.

Pennington and Counselor Hughes.  Both Dr. Pennington and Counselor Hughes imposed greater restrictions than their treatment records showed.  The Court concludes that the ALJ properly discounted these opinions after finding that the opinions were not supported by objective evidence and that the treatment notes did not record any significant limitations due to the alleged impairments. *See Wagner v. Astrue*, 499 F.3d at 849 (ALJ may credit another medical evaluation over that of treating physician when other assessment is supported by better medical evidence, or where treating physician renders inconsistent opinions); *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (medical opinion that applicant is disabled involves issue reserved for Commissioner, and is not entitled to controlling weight).

Substantial evidence supported the ALJ's Decision regarding Plaintiff's mental restrictions. Dr. Shry noted Plaintiff did not appear to be limited in her ability to cope with the typical demands of basic work like tasks and she was not impaired in her ability to attend and sustain concentration and tasks; however, she might be mild to moderately limited in her ability to sustain persistence with completing tasks, but she did not seem to be impaired in her ability to complete work like tasks within acceptable timeframes. (T. 490) Plaintiff reported she had the capability to pay bills, count change, and use a checkbook or money order. (T. 168) Plaintiff's hobbies included watching television and playing with her grandchildren. (T. 169) She held a license as a certified nursing assistant, and she worked as a sales manager, bus driver, delivery driver, and at a chicken plant. (T. 175-183, 196) Holding jobs like these for several years, even with possible cognitive disabilities, supports the ALJ's finding of non-disabled. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000); *Clark v. Apfel*, 141 F.3d 1253, 1255-56 (8th Cir. 1998). *See also Miles v. Barnhart*, 374 F.3d 694, 699 (8th Cir. 2004).

16

Plaintiff also argues that the ALJ erred in his physical RFC assessment when he relied upon the State Agency opinion evidence. (Doc. 11, pp. 15-17) In making his RFC determination, the ALJ relied on diagnostic testing from August 2008 showing Plaintiff had small bilateral hip joint effusions, slightly greater in the left then the right, and there was no evidence of arthritic changes, avascular necrosis, bone contusion, or fracture. The magnetic resonance imaging ("MRI") scan of her lumbar spine, taken in August 2008, showed L5-S1 and L4-5 disc bulges with facet hypertrophic changes and no focal disc herniations or canal stenosis. (T. 299-300) A computerized tomography ("CT") scan of Plaintiff's head, taken in November 2008, was normal. (T. 352) X-rays taken of Plaintiff's right hip, knee, wrist, pelvis, and lumbar spine taken in October 2009 were normal. (T. 350) X-rays taken in 2010 of Plaintiff's lungs, lumbar, and chest were normal; however, her shoulder showed minimal degenerative findings in both AC joints, there were no findings of calcific tendinitis, acute bone or joint abnormalities, and there was reasonable internal and external rotation of the humeral heads. (T. 343-348) In October 2011 an x-ray of Plaintiff's lower lumbar spine showed the lumbar vertebral body heights were preserved and the disc space intervals and alignment were radiographically unremarkable. (T. 455) A CT of Plaintiff's cervical, lumbar, and thoracic spine showed some degenerative changes, but no acute abnormalities. (T. 464) Plaintiff's CT scans of her head, brain, and lumbar and cervical spine taken in May 2013 were all negative. (T. 522-525) In September 2013 Plaintiff's x-ray of her lumbar spine showed no acute bony fragments. (T. 544)

The ALJ also considered the medical evidence submitted from Clarksville Medical Group. Plaintiff was treated at Clarksville Medical Group from October 30, 2008 until September 2012. During the course of her treatment, Plaintiff was scheduled to see a neurologist; however, she did not show up. (T. 340-341) Plaintiff was discharged from physical therapy after twelve visits.

Plaintiff indicated to the therapist she was going to seek treatment from another doctor because "she felt as if the one she had did not care." (T. 461) The physical therapist questioned the veracity of her complaints.  During one session Plaintiff yelled out in pain when she was transferring; however, she stood on her tip toes and leaned over the counter to get candy out of the candy dish. (T. 421) After the physical therapist relayed this information to her doctor at the Clarksville Medical Group, the doctor noted this "further confirmed she was not truthful regarding her subjective complaints of pain and the extent of her injuries." (T. 461) Plaintiff attempted to switch doctors at the Clarksville Medical Clinic; however, Dr. Sarah Woodruff noted she could not take her on as a chronic pain client. (T. 513)

Another concern for the Court was Plaintiff's drug seeking behavior.  Plaintiff had been to the emergency room twenty-four times for complaints of pain from December 2008 to June 2009. (T. 333) The doctor at the Clarksville Medical Clinic informed the Plaintiff it appeared to be a "high probability of drug seeking behavior." (T. 333) An emergency room doctor indicated he would need a note from Plaintiff's doctor in order to continue treatment for headaches at the emergency room. (T. 322) Moreover, Plaintiff went to two different emergency rooms on the same day seeking treatment. (T. 441, 458) *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain"); *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003).

Plaintiff contends the ALJ based his entire RFC upon the physical RFC of Dr. Jonathan Norcross, state agency medical consultant, and that the opinion of Dr. Norcross did not constitute substantial evidence. (Doc. 11, pp. 15-17) The ALJ took into consideration Dr. Westbrook's consultative physical examination in determining his RFC.  The ALJ opined Dr. Westbrook's opinion was more limiting than the objective medical evidence of record would support.  Dr.

18

Norcross concluded, after reviewing the evidence, Plaintiff was capable of performing light work, with postural limitations. While the ALJ did afford Dr. Norcross' opinion great weight, it was supported by the medical evidence of record and the examination by Dr. Westbrook. See *Wagner v. Astrue*, 499 F.3d at 849 (ALJ may credit another medical evaluation over that of treating physician when other assessment is supported by better medical evidence, or where treating physician renders inconsistent opinions).

It is also noteworthy that throughout her course of treatment Plaintiff continued to live an active lifestyle. Plaintiff was in a motorcycle accident on October 15, 2011. (T. 465) She fell off of the top of her motor home and broke her elbow in 2013. She reported to Dr. Robert Noonan that she was able to work and could perform activities of daily living, but she just wanted pain management. (T. 530) The active lifestyle the Plaintiff continued to live was not indicative of someone who was disabled. *See, e.g.*, *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F. 3d at 852 (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends").

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the objective medical evidence, opinion evidence, state-agency evidence, and the testimony of the

Plaintiff, the Court concludes that the RFC determined by the ALJ is supported by substantial evidence.

## IV.   <u>Conclusion:</u>

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 8th day of July, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE